IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DWAYNE L. RIECO,

          Plaintiff,                   15cv0657

                                     **ELECTRONICALLY FILED**

          v.

PAUL AURANDT *SRTU, Unit Manager*, C/O
CLEM, CAROL SCIRE, and CO II
ROBERSON,

          Defendants.

**MEMORANDUM OPINION**

      This is a prisoner civil rights case brought by Dwayne L. Rieco, a frequent and

experienced *pro se* litigator in both this Court and the United States Court of Appeals for the

Third Circuit. Plaintiff, a *pro se* inmate, is currently in the custody of the Pennsylvania

Department of Corrections ("DOC") at the State Correctional Institution in Pittsburgh. See

Amended Complaint filed on August 28, 2015 at doc. no. 13. Presently before the Court is

Defendants' Motion to Dismiss Plaintiff's Amended Complaint. Doc. no. 50.

      Upon receipt of this Motion to Dismiss, the Court ordered Plaintiff to file a second

Amended Complaint or a Response to the Motion to Dismiss. Doc. no. 52. Plaintiff was given

two extensions of time to either file a second Amended Complaint or file a Response to the

Motion to Dismiss.[1] See text order dated 1/15/2016 and doc. no. 62. Plaintiff's Response was

---

[1] Plaintiff routinely asks this Court (as well as the United States Court of Appeals for the Third Circuit)
for extensions of time with respect to his filings. As this Court recently noted, of the six cases that
Plaintiff has filed with this Court in the last three years, he has filed approximately seventeen requests for
Motions for Extensions of Time. Moreover, the following cases were appealed from this District Court to
the United States Court of Appeals for the Third Circuit and are currently active: *Rieco v. Scire,* case no.
14-1606 (Court of Appeals dismissed for lack of appellate jurisdiction on September 14, 2015, but has re-
docketed this matter at case no. 15-3244); *Rieco v. Moran,* 15-2529 (appeal currently pending); *Rieco v.
Coleman,* case no. 15-2564 (appeal currently pending); and *Rieco v. Baucher,* case no. 16-1271 (appeal
currently pending). Plaintiff has requested (thus far) seven extensions of time in those four active
appellate cases. See also Section "IV." of this Opinion, *infra*.

due on March 3, 2016. Instead of filing his Response on March 3, 2016, Plaintiff asked this

Court for yet another extension of time. See doc. no. 65. Although it is somewhat unclear from

this third motion (doc. no. 65) precisely why this third extension of time is needed, a portion of

the motion suggests that Plaintiff cannot fit his Response into a single envelope and that he does

not have sufficient postage for two envelopes. The Court notes that its Order (doc. no. 52)

specifically limited this Response to 20 pages, yet it appears from Plaintiff's Motion to Extend

Time (doc. no. 65), that he was attempting to mail in excess of 40 pages. In addition, despite his

alleged postage shortage, Plaintiff managed to find sufficient postage to file this third Motion for

an Extension of Time.

The Court also notes this matter was initiated by Plaintiff on May 20, 2015, and since

then, there have been 65 docket entries filed on this record, and yet this case continues to have an

unresolved Motion to Dismiss pending. Therefore, the Court having carefully considered

Plaintiff's third request for a continuance to respond to the Motion to Dismiss denied this request

for a continuance (see text order dated March 7, 2016, at doc. no. 66), and will now rule on the

Motion to Dismiss.[2]

## I.     STANDARD OF REVIEW

Defendants here have filed a 12(b)(6) Motion to Dismiss most of the claims asserted by

Plaintiff.

Under Rule 12(b)(6), a Complaint must be dismissed for "failure to state a claim upon

which relief can be granted." Detailed factual pleading is not required – Rule 8(a)(2) calls for a

---

[2] In ruling on this Motion to Dismiss, this Court recognizes that it must liberally construe the *pro se* litigant's pleadings and "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)). *Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–521 (1972).

"short and plain statement of the claim showing that the pleader is entitled to relief" – but a Complaint must set forth sufficient factual allegations that, taken as true, set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plausibility standard does not require a showing of probability that a claim has merit, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007), but it does require that a pleading show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Determining the plausibility of an alleged claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013); *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (In reference to third step, "where there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.").

When adjudicating a Motion to Dismiss for failure to state a claim, the Court must view all of the allegations and facts in the Complaint in the light most favorable to the plaintiff, and must grant the plaintiff the benefit of all reasonable inferences that can be derived therefrom. *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint. See *Reuben v. U.S. Airways, Inc.*, 500 F. App'x 103, 104 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (stating that District Courts "must accept all of the Complaint's well-pleaded facts as true, but may disregard any legal conclusions"). "While legal conclusions can provide the framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563 n.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler,* 578 F.3d at 212.

In short, a Motion to Dismiss should be granted if a party fails to allege facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563 n.8.

## II.     FACTUAL HISTORY

The Court notes that Plaintiff, despite his *pro se* litigant status, has filed six different cases in this Court in the last three years, which renders him familiar with the Court's practices, procedures, and time deadlines. The fact that Plaintiff is a frequent litigant with this Court is

also important because allegations Plaintiff has raised in other lawsuits seem to resurface from case to case. Thus, at times it is difficult for the Court to discern whether a claim against a particular defendant has already been adjudicated or if a new claim or cause of action is being raised.[3]

## A. Claims Against Defendant Aurandt

The instant lawsuit appears to allege that Defendant Clem threatened to physically harm Plaintiff and threatened to take away all of Plaintiff's legal papers. Amended Complaint, doc. no. 13, p. 3, ¶ 2. Plaintiff's Amended Complaint alleges that he reported Clem's threats to Defendant Aurandt, but Defendant Aurandt did not stop Defendant Clem from verbally abusing Plaintiff. Id., at p. 3, ¶ 7; and Id., at p. 5, ¶ 6-7. Plaintiff next alleges that he sustained a cut at or near his left eye socket (although he does not indicate at this juncture how this injury occurred) and that his legal papers were removed, at some point in time after he reported Defendant Clem's threats to Defendant Aurandt. Id., p. 3, ¶ 8-9.

## B. Claims Against Defendant Clem

Plaintiff's Amended Complaint alleges that Clem "stalked" Plaintiff for two years (doc. no. 13, p. 4, ¶ 1), deprived Plaintiff of food, and prevented him from being able to file grievances with Defendant Scire. Id., p. 4, ¶ 2. The Amended Complaint also alleges that (presumably) on October 16, 2014, Defendant Clem assaulted Plaintiff by grabbing him and throwing him to the

---

[3] United States Magistrate Judge Eddy noted the number of lawsuits Plaintiff has filed with this Court in her recent Memorandum and Order in this case when she stated:

> The court notes that Plaintiff is a frequent litigant and is sophisticated in his filings and case management strategy. Of the six cases that Plaintiff has filed in this Court in the last three years, he has filed approximately 17 requests for Motions for Extensions of Time. The frequency with which Plaintiff requests extensions and engages in extensive motions practice, causes the court to view his pending request with skepticism.

Doc. no. 62, p. 2, n 1.

floor, which caused physical injury to Plaintiff near his left eye. Id., p. 5-6 ¶ 9. Per the Amended Complaint, the assault on Plaintiff was a planned attack. Id., p. 5-6 ¶ 5-12. Plaintiff also alleges that Defendant Clem lied about why he used physical force on Plaintiff, causing Plaintiff to sustain a facial injury. Id., p. 6, ¶ 12.

### C. Claims Against Defendant Roberson

Although Plaintiff's claim against Defendant Roberson is less clear, it appears as though Plaintiff is claiming that Defendant Roberson destroyed and/or confiscated all of Plaintiff's legal materials. Id., p. 6, ¶ 1. Plaintiff does not indicate when the confiscation occurred, but other allegations related to Defendant Roberson indicate that it occurred on the same day that Plaintiff sustained an injury to the left side of his face/eye, presumably on October 16, 2014. Id., p. 7, ¶ 5. Plaintiff also claims that he was denied pen and paper for two days after this incident. Id., p. 7, ¶ 5.

### D. Claims Against Defendant Scire

The Amended Complaint indicates that Defendant Scire is a grievance officer. Id., p. 10, ¶ 1. Plaintiff alleges that he filed two grievances related to the alleged planned attack on his person which presumably took place on October 16, 2014 – grievance nos. 533144 and 533478. Id., p. 10-11, ¶ 2-5. Plaintiff claims Defendant Scire failed to properly perform her duties as the grievance officer and noted that she should have "rejected [the other Defendants'] responses [to these grievances]" and by not doing so, she "aided in their criminal violations." Id., p. 11, ¶ 6. Plaintiff also references a third grievance – no. 534288 – in which he claims that Defendant Clem denied Plaintiff his kosher meal. Id., p. 11, ¶ 7. But it is unclear from the remainder of the Amended Complaint what, if anything, Defendant Scire did or did not do in relation to this particular grievance.

### III. ANALYSIS

In this case, Plaintiff appears to assert some new, never before raised claims against Defendant Aurandt, Defendant Clem, and Defendant Roberson. However, the claim Plaintiff asserts against Defendant Scire appears to the Court to be a claim that Plaintiff raised in *Rieco v. Scire, et al.*, 13-cv-1360.[4]

The Court begins its analysis by focusing on the allegations against Defendant Scire. All of Plaintiff's allegations in his Amended Complaint against Defendant Scire relate to her work and decisions as a grievance officer.

". . . [D]efendants' alleged obstruction of prison grievance procedures does not give rise to an independent claim. Prisoners do not have a constitutional right to prison grievance procedures." *Heleva v. Kramer*, 214 Fed. Appx. 244, 247 (3d Cir. 2007); see also *Burnside v. Moser*, 138 Fed. Appx. 414, 415 (3d Cir. 2005) (. . . "[P]risoners have no constitutional right to a grievance process, and a prison official's denial of an inmate's grievance does not constitute a due process violation.").

Here, the allegations raised by Plaintiff seem to indicate that he disagrees with the findings of Defendant Scire with respect to at least one of his grievances. As this Court has repeatedly noted and has held in other cases filed by this Plaintiff (*i.e., Rieco v. Scire, et al.*, 13-cv-1360), inmates (like Plaintiff) do not have a constitutional right to a prison grievance system. Even if a plaintiff alleges that s/he was entirely denied a prison grievance process, or whether a plaintiff disagrees with an outcome, or whether a plaintiff believes the procedure itself was

---

[4] As noted above, *Rieco v. Scire*, District Court case no. 13-1360, was initially dismissed by the Court of Appeals for the Third Circuit for lack of appellate jurisdiction on September 14, 2015. See Court of Appeals case number 14-1606. However, the Court of Appeals noted that Plaintiff had filed a document on the District Court's docket (doc. no. 88 at case no. 13-1360) which indicated his clear intent to appeal. Thus, Plaintiff was directed to file his Notice of Appeal with the appropriate Court, and after he did so, his appeal in the *Scire* case (District Court case no. 13-1360) was re-docketed with the Court of Appeals at case no. 15-3244.

somehow obstructed, these are not actionable claims which can be raised. Accordingly, because all of Plaintiff's allegations in this case, as they pertain to Defendant Scire, relate to her work and/or decisions as a grievance officer, they will be dismissed. The Court is dismissing the claim against Defendant Scire because it would be futile for Plaintiff to amend his claim against Defendant Scire. The Court will, therefore, grant Defendants' Motion to Dismiss with respect to Defendant Scire.

Next, despite the cogent arguments advanced by Defendants in their Brief in support of their Motion to Dismiss, many of these arguments are simply premature. Based solely on the assertions as pled by Plaintiff in his Amended Complaint, and accepting those assertions as true as required by the Court at this juncture of the legal proceedings, this Court finds that Plaintiff may proceed on the following claims:

First, Plaintiff may proceed with his claim against Defendant Aurandt, which the Court perceives to be a failure to protect claim under the Eighth Amendment. See doc. no. 51, p. 3. This claim is limited solely to the incident that is alleged to have taken place on October 16, 2014.

Second, Plaintiff may proceed with his claim against Defendant Clem for excessive force and violations of conditions of confinement.[5] The excessive force claim is limited to the incident that is alleged to have taken place October 16, 2014, and the conditions of confinement claim is limited to the time(s) that Defendant Clem purportedly denied Plaintiff a kosher meal – the Amended Complaint is vague on a date(s).

Third, Plaintiff may proceed against Defendant Roberson for denying Plaintiff access to his legal materials which is akin to an access to court claim. However, this claim is confined to

---

[5] The Court acknowledges that Defendants did not request that the claim against Defendant Clem be dismissed. Nevertheless, the Court merely wants to place on the record the cause of action that is pending and will move forward against Defendant Clem to clarify same for the Parties.

the confiscation of Plaintiff's legal materials which the Court believes Plaintiff claims occurred on October 16, 2014.

The above referenced claims are <u>the only</u> claims which may proceed at this juncture. No other claims or other alleged incidents may be brought as part of this case. Following the close of discovery, should any party wish to file a Motion for Summary Judgment on some or all of the above-referenced claims, this Court will entertain such a Motion provided there are no material facts in dispute.

### IV.     MOTIONS FOR EXTENSION OF TIME

Before concluding this Opinion, the Court wishes to address the numerous Motions for Time Extensions filed by Plaintiff. While a request for a time extension is certainly necessary in some cases, the repeated, successive motions of this nature in every lawsuit filed by Plaintiff in this Court and in those cases he has appealed to the Court of Appeals bear discussion.

First, by filing so many time extension motions, the Court begins to consider them akin to the fable of the "Boy Who Cried Wolf." The repetitious and successive filing of this sort of motion, makes it virtually impossible for any Court to ascertain when Plaintiff is truly in need of an extension of time to complete the preparation of his documents.

Second, the Court has grave concerns about perpetually delaying the forward progress of a *pro se* prisoner civil rights lawsuit, even when it is Plaintiff who is repeatedly requesting the delay. The numerous cases that Plaintiff has filed in this Court (as well as the appeals he has taken to the Court of Appeals for the Third Circuit), usually allege that prison guards, individually and/or acting in concert with one another, are violating Plaintiff's civil rights in such a way that Plaintiff often requests injunctive relief to protect him from the alleged abuse. This lawsuit (as noted above) alleges that Plaintiff was threatened to be beaten by a guard, and further

alleges that Plaintiff sustained a facial laceration later that same day, presumably caused by the guard who had threatened him with violence earlier in the day.  These are serious allegations of bodily harm, and therefore, the Court is of the opinion that this case must move forward to trial and final resolution.  However, the Court's efforts to move the case forward are thwarted by Plaintiff's continual motions for time extensions.  The Court must consider whether the most recent Motion to Continue filed by Plaintiff (not possessing enough postage to send two packages to the Court, in excess of the Court-ordered page limits), outweighs the need for this case to move forward toward a resolution, given that Plaintiff and the named Defendants must interact with one another on a daily basis.

Third, this Court can readily track Plaintiff's requests for continuances because the lawsuits he has filed in this District are automatically assigned to the same United States Magistrate Judge and this Court.[6]  This Court reviews each case in a vacuum, but cannot ignore that Plaintiff is delaying the prosecution of all of his cases by filing these incessant motions for extensions of time.  In doing so, not only does he prolong the amount of time it will take to get to a resolution of his claims, his continual motions deplete substantial resources within the Court system and cause delays for other *pro se* litigants who similarly deserve their day in Court.

Finally, this endless motion-filing conduct places great expense upon the Commonwealth, and permits Plaintiff to manipulate the federal judiciary.

---

[6] This differs from the United States Court of Appeals for the Third Circuit where, generally speaking, each of Plaintiff's Motions for an Extension of Time with regard to his various matters on appeal is randomly assigned to a motions panel.  Thus, the Court of Appeals may not realize how many of these Motions are routinely filed by Plaintiff.

## V.     CONCLUSION

The Court will grant in part and deny in part the Motion to Dismiss the Amended

Complaint.  The Court will grant the Motion as to Defendant Scire, again noting that any

amendment to the claims brought against this Defendant would be futile, but will deny it as to all

other Defendants.  The only remaining claims have been set forth, above, in this Opinion and no

other claims will proceed other than those outlined by this Court.  An appropriate Order shall

follow.

<u>s/ Arthur J. Schwab</u>
Arthur J. Schwab
United States District Judge

cc:     ECF registered counsel of record

DWAYNE L. RIECO
HU-2494 SCI
Pittsburgh Post Office Box 99991
Pittsburgh, PA 15233